### Thomas G. Atkins *vs.* Gardner Chilson & others.

A lessor is not entitled, during the continuance of the lease, to an injunction to restrain the lessee from obstructing and darkening windows in the demised tenement, unless the injury will probably be irreparable, or cannot be compensated by damages recovered in a suit at law.

A. demised to C., for eleven years, a warehouse bounded on vacant land of S., " excepting and reserving unto said A. the right to stop up and build against the five windows in said warehouse, which front upon " S.'s land; " and also to build against and put timbers into the wall, on the side of said warehouse in which the said five windows are, at his pleasure : " C. afterwards took a lease from S. of said vacant land for fifteen years, terminable by himself in ten years, and proceeded to erect a building thereon, in contact with the wall of said warehouse in which said windows were. *Held*, that A. was not entitled to an injunction to restrain C from so doing.

THE plaintiff set forth, in a bill in equity, that he was " seized in his demesne as of fee in reversion of and in a certain warehouse and land in Boston," bounded on the southeasterly side thereof by land of Sybilla Stodder and others ;

that in the southeasterly wall of said warehouse were five ancient windows, which for more than sixty years had been, and still ought to remain, so that light and air might pass freely over the land next adjoining the same into said windows, &c. ; that by an indenture of lease, dated December 30th 1841, the plaintiff demised said warehouse to the defendant, to hold for the term of eleven years from the 1st of January 1842 ; but that in and by said indenture, there was (among others) the following reservation : " Excepting and reserving unto himself, the said Atkins, his representatives and assigns, the right to stop up and build upon and against the five windows in the said store, which front and look upon or towards Ann Street in said Boston, and also to build against and put timbers into the wall on the side of said store, in which the said five windows are, at his and their pleasure, during said lease : " That the defendant knew, when said indenture was executed, that such reservation was made, because the plaintiff expected to sell his rights and easements to the owners of the adjoining lands (Sybilla Stodder and others) when they should desire to build thereon ; and that the defendant, when he was negotiating for said lease, offered the plaintiff $ 100 per annum, for eleven years, for the right to obstruct said windows ; but the plaintiff, having been offered a larger sum, did not accede to the defendant's said offer ; and therefore said reservation was made : That after the defendant became possessed of said warehouse, as aforesaid, viz. on the 20th of April 1842, said Sybilla Stodder and others, by indenture of lease between them and the defendant, demised to him the said adjoining land, for the term of fifteen years, and he thereupon entered under said lease, depriving the plaintiff of the benefit of said lights, and obtaining the benefit thereof to himself, without making any compensation to the plaintiff ; and that the defendant was about to erect, in contact with the southeasterly wall of said warehouse, a substantial building, three stories high, designed to last a long time and beyond the term of the plaintiff's lease to him ; thereby shutting out nearly all the light and air from said windows, and thus injuring the plaintiff's said estate, and diminishing the value of said ware-

house and appurtenances, and depriving the plaintiff of his rights reserved by his said lease : That said lease contains the following covenant of the defendant : " And the said Chilson covenants and agrees with and to the said Atkins, his heirs and assigns, that no alterations or additions shall be made during the term aforesaid, in or to the same, without the consent of the said lessor, or of those having his estate in the premises, being first obtained in writing allowing thereof: " Yet that the defendant, without any such consent of the plaintiff, has prepared to make material alterations in the premises, by erecting said building and destroying said easements. Wherefore the plaintiff prayed for an injunction and for relief.

No injunction was granted upon the filing of the bill, and Chilson erected the building before he made his answer.

The defendant Chilson, in his answer, denied that he knew, when he received his lease from the plaintiff containing said reservation, that the plaintiff expected to sell his rights in regard to said windows to the owners of the adjoining land, when they should desire to build thereon ; but averred that he then supposed the object of the reservation was, to prevent controversy between the plaintiff and defendant, if the plaintiff should buy the adjoining land and build thereon. He also denied that he offered the plaintiff any thing for his said rights, after he agreed to hire said warehouse. He averred that he was informed, after he took said lease from the plaintiff, that the owners of the adjoining land were about to let it, and have a stable built on it, and that he hired it for the term of fifteen years from May 1st 1842, terminable by himself at the end of ten years, to prevent the erection of a stable ; that he had erected thereon such a building as the plaintiff had, in his bill, alleged the defendant was about to erect, so as to cover said windows ; but he denied that said building was an addition to said warehouse or an alteration thereof, or that the windows were ancient windows, or were of any use for the purpose of furnishing light or air to said warehouse, as the same was abundantly supplied with light and air by other windows. He averred that said windows were originally put into a building erected for a dwelling-house; that the plaintiff

converted said building into a warehouse, lighted on the north and south by other windows, and covered the windows in question with iron covers; that the defendant, when he entered into said warehouse, placed shelves across said windows, for the purpose of putting his goods thereon; and that the plaintiff, though well knowing that the defendant was so placing said shelves, made no objection thereto.

The defendant Chilson further averred, that if the plaintiff had any easement for air and light in said windows, it was only a reversionary interest, after the expiration of said defendant's lease, and that the plaintiff could not be injured, during the continuance of the lease, by the building erected by said defendant. He also averred that the plaintiff's estate was increased in value by reason of the erection of said building.

Sybilla Stodder and others were made parties to the bill, as defendants, and filed a joint answer which need not be here set forth.

Evidence was taken as to the windows being ancient, &c.

*B. R. Curtis*, for the plaintiff. The exception and reservation, in the indenture, of the plaintiff's right to stop up and build against the windows, amount to a covenant by the lessee that the lessor shall enjoy the rights reserved without interruption by the lessee. *Cole's case*, 1 Salk. 196. S. C. by name of *Bush* v. *Calis*, 1 Show. 388. *Stevinson's case*, 1 Leon. 324. *Russel* v. *Gulwel*, Cro. Eliz. 657. *Duke of St. Albans* v. *Ellis*, 16 East, 352. *Seddon* v. *Senate*, 13 East, 63. And the lessee's covenant is express, that no alteration, &c. shall be made without the plaintiff's written consent. A court of equity will interpose by injunction to prevent a lessee from doing what he has covenanted not to do. *Barret* v. *Blagrave*, 5 Ves. 555. *De Wilton* v. *Saxon*, and *Drury* v. *Molins*, 6 Ves. 106, 328. *Ward* v. *Duke of Buckingham*, cited in 10 Ves. 161. *Mayor of London* v. *Hedger*, 18 Ves. 355. *Douglass* v. *Wiggins*, 1 Johns. Ch. 435. *Barrow* v. *Richard*, 8 Paige, 351.

Relief should be granted by injunction, to prevent multiplicity of actions. *Hanson* v. *Gardiner*, 7 Ves. 310. *Livingston* v *Livingston*, 6 Johns. Ch. 497. The plaintiff, as reversioner, may

maintain an action at law for the injury set forth in his bill *Bower* v. *Hill*, 1 Bing. N. R. 555. *Back* v. *Stacy*, 2 Russell, 121. Com. Dig. Action upon the case for a Nuisance, B.

*Fletcher & Sewall*, for the defendants. The English law, as to window lights, has not been adjudged to be in force in this Commonwealth, though it seems to have been recognized in *Story* v. *Odin*, 12 Mass. 157, and Rev. Sts. *c.* 60, §§ 27, 28. It was not till since the American revolution, that the English courts held that an action would lie for stopping windows, unless they were 60 years old. There is no adverse possession, in most cases; and the English law is not applicable to the state of our country It has been rejected by the courts of some of the States. See 3 Dane Ab. 54, 55. *Ingraham* v. *Hutchinson*, 2 Connect. 597 — 599, per Gould, J. *Parker* v. *Foote*, 19 Wend. 309.

The object of the plaintiff's reservation in the lease was to prevent Chilson from setting up his rights against the plaintiff, if Sybilla Stodder and others should build on the adjoining land, or if the plaintiff should buy or hire that land, and build on it. The covenant against alterations and additions applies only to the building itself, and has not been broken by the lessee.

The plaintiff had abandoned or destroyed his easement in the windows, if he had any, by converting the building into a tenement in which the windows were not necessary, nor used, nor intended to be used. Gale & Whatley on Easements, (Amer. ed.) 257. *Moore* v. *Rawson*, 3 Barn. & Cres. 332 *Curtis* v. *Jackson*, 13 Mass. 514. Nothing beyond what has been used is gained by prescription. *Cherrington* v. *Abney*, 2 Vern. 646. *Garritt* v. *Sharp*, 3 Adolph. & Ellis, 325. *Blanchard* v. *Bridges*, 4 Adolph. & Ellis, 176.

As neither the value nor the convenient use of the plaintiff's estate is diminished by Chilson's acts, no action would lie at law. *Parker* v. *Smith*, 5 Car. & P. 438. *Pringle* v. *Wernham*, and *Wells* v. *Ody*, 7 Car. & P. 377, 410. *Martin* v. *Goble*, 1 Campb. 323. And if the plaintiff has a right of action at law, yet an injunction should not be granted, because his injury, if any, is not irreparable, but can be fully compensated by

a recovery of damages. *Ingraham* v. *Dunnell,* 5 Met. 118 Drewry on Injunctions, 245. For the same reason, the court will not decree specific performance of a covenant or other contract. Jeremy on Eq. Jurisd. 424. Besides; the plaintiff's bill is not for a specific performance. It does not mention the reservation as a covenant not to build against the windows, and therefore Chilson made no answer to such matter.

DEWEY, J. The plaintiff relies upon two distinct grounds, either of which, he insists, will authorize and require the court to grant the injunction prayed for.

1st. It is contended that he may maintain his bill upon the right acquired by the principles of the common law, as held in England, by force of which twenty years' adverse use of light and air gives to the possessor an easement of a perpetual character. The defendant denies this position to be well maintained in the present case, either by the facts or the principles of law as held in this Commonwealth. In relation to the rules of law, it is urged by the defendant, that the later English doctrines have not been sanctioned with us, and that they are not adapted to the state of things existing in this country, and especially are unsound and unreasonable when applied to the case of a mere use of lights, where such use might well have been enjoyed while yet doing nothing beyond what the owner of a tenement has a perfect right to do, viz. placing a window in his own building and entirely upon his own premises ; indeed, doing nothing by reason of which he would subject himself to an action, and as to which the adjacent proprietor could only signify his dissent by the unneighborly act of erecting a wall or other obstruction sufficiently high to darken such window.

This question is an interesting one ; and the view taken of it by the counsel for the defendant seems to have been sanctioned by the courts of the States of New York and Connecticut.

The tendency of our decisions has been the other way ; and the provisions of the Rev. Sts. *c.* 60, §§ 27, 28, may present this question, in this Commonwealth, in a different aspect from that in which it would otherwise have been considered. This statute provision obviates one of the strong objections against the

English doctrine, inasmuch as it provides a very simple mode of preventing the mere use of light and air from ripening into a right, by filing a notice in the office of the register of deeds, and serving a copy of the same upon the party enjoying the use of such light and air. But, for the reasons which I shall hereafter state, we have not found it necessary to consider, or express any opinion upon the point whether any such legal easement in the light and air ever vested in the plaintiff, nor whether, if it once attached to the plaintiff's building, it has been subsequently lost by abandonment. This latter question of loss by abandonment would also have required a deliberate consideration ; but upon both these points no opinion is expressed by the court.

2d. Another and distinct ground, upon which the plaintiff places his right to an injunction restraining the defendant from the erection of a building on the adjacent lot of land, is that arising from the relation of the parties under the plaintiff's lease to the defendant of the warehouse, by certain articles of agreement made on the 30th of December 1841. This lease is made with sundry exceptions, of which the one material to the present question is as follows : " The said Atkins reserving to himself and his assigns the right to stop up, and build upon and against the five windows in said store, which front upon Ann Street, and to build against and put timber into the wall on the side of said store in which the said five windows are, at his and their pleasure."

The plaintiff contends that this lease may be properly construed to contain an implied covenant that he shall enjoy all the rights reserved, free from any interruption by the lessee, and that the defendant may properly be enjoined to fulfil this covenant.

No doubt an injunction will lie, to restrain the lessee from violating his covenant, in a proper case, and when it is necessary to prevent irreparable mischief; as in the cases, stated in the books, of an injunction to restrain a lessee from ploughing up pasture land contrary to the articles of indenture between landlord and tenant. Whether, in the present case, the plaintiff can raise any such covenant upon this indenture, as would support an ac-

tion at law for the supposed breach, we do not deem it necessary to decide. In the view we have taken of the merits ot the plaintiff's case, the present bill may properly be disposed of without pronouncing an opinion upon this point ; for if the right be only doubtful, or the injury complained of trivial ; if it be one easily compensated in damages ; if there exist no immediate cause for the application of the power of the court in this peculiar mode ; we should be slow to grant this prayer for an injunction. How far this application for an injunction, founded upon this implied covenant, is obnoxious to any or all of these objections, I shall hereafter consider.

When we recur to the principles upon which injunctions are granted in cases like the present, we shall find the doctrine to be, that the injury must be substantial ; that it is to be abated because it operates clearly to destroy or diminish the beneficial use of the house or tenement thus deprived of its accustomed light and air. Upon this point, the case of the plaintiff is entirely without merits. He has no house, or store, or building, as to which he has the occupation or right of occupation, that is affected in the slightest degree by the acts of the defendant in darkening these windows. If they are required to give light and air to the warehouse, it is no private injury, surely, to the plaintiff, who has demised that warehouse to the defendant, by a lease extending to the year 1852. This is the tenement to which the rights, if any exist, attach ; and such is the nature of the plaintiff's interest therein. He has transferred to the defendant the right of occupation of the warehouse for the next ensuing eight years. Of course, any thing done by the defendant, in obstructing and darkening these windows, does no present injury to the plaintiff, so far as the warehouse is concerned.

But then it is said, that the plaintiff has a reversionary interest in the warehouse ; and he insists that this may avail him to sustain the present bill. The principle settled in *Ingraham* v. *Dunnell*, 5 Met. 118, bears directly upon this point. It was there held, that an injunction will not be granted to restrain an injury caused to a reversionary interest in an estate, unless such injury will probably be irreparable, or cannot be compensated in

damages recoverable in a suit at law. Now it is quite obvious, that the injury occasioned by the erecting of the new building on the adjacent lot, is not irreparable. The new building may at any future time be taken down by the defendant, and removed, without the slightest injury to his tenement. It may as easily be done just before the plaintiff's reversionary right shall entitle him to resume the possession of the store, as at this early period.

The plaintiff relies, apparently with more confidence, upon his right to maintain this bill for an injunction, as a compulsory process restraining the defendant under the implied covenant in the indenture. How stands this part of the case upon the matter of deprivation of the plaintiff's rights ? What is the substantial injury ? What is the deprivation of enjoyment of any right arising under such a covenant as is supposed, admitting the legal right to exist under the covenant, as claimed by the plaintiff? The reservation to the plaintiff was the right to stop up and build against the five windows in the southeasterly wall of the warehouse, and to insert timbers in the wall, at his pleasure. Does the erection of the new building on the adjacent lot constitute the only obstacle to the use by the plaintiff of the warehouse and its easements, in the manner reserved in the indenture ? Suppose the new building had not been erected, or suppose it now prostrated by order of the court ; is the plaintiff any better able to use beneficially his rights reserved by the indenture ? He is not the owner of the adjacent lot, and has no right to the use of it. Unless, therefore, he can go farther than to obtain an order of the court for abating the supposed nuisance occasioned by the erection of this building on the adjacent lot, and can also obtain a decree of the court setting aside the lease of the Stodders to Chilson, he can acquire the present enjoyment of no privilege, by obtaining the injunction prayed for. And further ; unless the plaintiff can obtain a decree of the court, compelling the Stodders to convey their adjacent lot to him, he would be without the means or the legal right to avail himself of the reservation. The wrong, therefore, which the defendant has done to the plaintiff, in the matter of the adjacent lot, is not to be remedied by granting the prayer for an injunction as to the erection of the build-

ing complained of. If any such breach of this covenant has occurred, it is much more properly a subject for an action at law. It is peculiarly a question to be settled at law, whether there is any such covenant, and, if so, whether there has been a breach ; and the injury alleged will admit of pecuniary compensation fully.

If it be urged that it may be necessary to sustain this bill in favor of the reversioner, in order to prevent the alleged encroachment upon his easement from ripening into a right by adverse use ; it may be replied, that the provision of the Rev. Sts. *c.* 60, § 28, on this subject, affords the plaintiff a simple and very economical remedy, fully adequate to the emergency.

*Bill dismissed.*